UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARICEL D. MASCARINAS,<br><br>Claimant,<br><br>v.<br><br>NANCY A. BERRYHILL ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:18-cv-10543 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Claimant Maricel D. Mascarinas ("Claimant") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Claimant is a forty-four-year-old female who was employed as a U.S. Postal clerk until September 2013. R. at 42.[1] Claimant stopped working because she began experiencing pain. *Id.* Claimant submitted an initial claim for disability on January 20, 2014 alleging disability due to herniated disc in lumbar spine, a neck condition, and lower back condition beginning September 12, 2013. R. at 62. Claimant experienced and continues to experience pain in her neck and shoulder pain that radiates down to her hands, numbness in her fingers, and frequent headaches. R. at 45-47.

An MRI of Claimant's lumbar spine taken on July 29, 2013 showed L5-S1 disc herniation and L4-L5 disc bulge. R. at 274. An MRI of her cervical spine taken on August 19, 2013, showed focal central disc herniation at C3-C4 and C4-C5, broad-based left paracentral disc herniation at C6-C7, and disc bulging at C5-C6. R. at 256, 70-71. An MRI of Claimant's thoracic spine from September 24, 2013 was unremarkable. R. at 469. An MRI of Claimant's cervical spine from June 2015 revealed disc herniations at C3-C4 to C6-C7 and cerebellar tonsil ectopic; straightening of the normal lordotic curve; and suggestive of a muscle spasm. R. at 447. By December 2016, an MRI of Claimant's left shoulder revealed a tear of the anterior margin of the supraspinatus tendon,

---

[1] Citations to "R." refer to the Administrative Record, ECF No. 5.

glenohumeral joint effusion, small fluid collection in the subdeltoid bursa, and impingement of the rotator cuff. R. at 526.

Claimant presented to Rosa Matos Neno, D.O., throughout the relevant period with complaints of neck pain and headaches. R. at 238, 241, 244. Dr. Neno completed a Disabaility Impairment Questionnaire on May 5, 2016 reporting that she diagnosed severe back and neck, shoulder pain, numbness of hands and legs, herniated discs in the cervical spine, bugling disc in the cervical spine, right hip pain, herniated lumbar/sacral discs, and bulging lumbar disc. R. at 478. Dr. Neno found that she could sit for one hour and stand/walk for one hour in an eight-hour work day and found, *inter alia*, that Claimant's pain would increase in a competitive work environment and would frequently interfere with her attention and concentration. R. at 480-81. Dr. Mark Filippone treated Claimant monthly between September 2013 and December 2016. Dr. Filippone completed a Disability Impairment Questionnaire on April 14, 2016 and concluded that Claimant was totally disabled. R. at 475. Claimant continuously underwent physical therapy at Kessler Physical Therapy. R. at 243, 298, 309, 315, 320, 329-31, 333, 338-39, 344, 329, 331, 333, 338, 341, 368, 377, 381, 448-49, 471, 489, 516, 523. On August 8, 2014, and December 2, 2014, state agency physicians Arthur Pirone, M.D., and Zwi Kahanowicz, M.D., respectively, reviewed Claimant's medical records and concluded that Claimant could perform work at the light exertional level. R. at 66-67, 75-76.

Ms. Mascarinas' claims were denied initially and upon reconsideration. R. at 70, 79-83. Claimant appeared at a hearing before ALJ Kenneth Ayers on January 9, 2017 in Newark, New Jersey. R. at 36-60, 92-93. In a hearing decision dated May 1, 2017, ALJ Ayers found Ms. Mascarinas not disabled and denied her application. R. at 8-26. On April 18, 2018, the Appeals Council denied Ms. Mascarinas' request for review. R. at 1-7.

The Social Security Administration uses a five-step sequential evaluation to determine if a claimant is entitled to benefits: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether claimant has a severe impairment; (3) whether this impairment meets or equals a listed impairment; (4) whether the impairment prevents claimant from performing her past-relevant work; and (5) whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520, 416.920(e)-(f), Part 404 Subpart P, Appendix 1. Claimant bears the burden of proof for the first four steps, and the burden shifts to the Commissioner as to step five. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since September 12, 2013, her alleged disability onset date. R. at 13. At step two, the ALJ found that Claimant had "severe" impairments of degenerative disc disease, cervical radiculitis, lumbosacral radiculitis, and internal derangement of both shoulders. R. at 13. At step three, the ALJ concluded that Claimant's impairments did not meet or

medically equal the criteria of any of the Listings. R. at 14. The ALJ subsequently determined, *inter alia*, that Claimant retained the RFC to perform sedentary work except she could occasionally lift and/or carry ten pounds; sit for six hours, stand for two hours, walk for two hours; and push and pull as much as she could lift/carry. R. at 14. Claimant's time off task can be accommodated by normal breaks. *Id.* The ALJ considered Claimant's subjective complaints in assessing Claimant's RFC, but found her alleged symptoms not entirely credible. R. at 14-19. At the fourth step, the ALJ concluded that Claimant was unable to perform her past relevant work as a clerk and parcel post worker. R. at 19. The ALJ proceeded through step five, finding that Claimant could perform other work that existed in substantial numbers in the national economy such as the representative jobs of table worker, document preparer, and preparer. R. at 19-20.

## II. STANDARD OF REVIEW

On a social security appeal from an ALJ's final decision, the district court conducts plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Thus, so long as there is substantial evidence to support the Commissioner's findings, district courts must affirm the decision, even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III. DISCUSSION

Claimant argues that the ALJ: (1) failed to properly apply the *de minimis* standard at step two to Claimant's headaches; (2) failed to properly accord weight to the treating physicians' opinions of record; (3) failed to properly evaluate Claimant's residual functional capacity; and (4) improperly evaluated Claimant's disabling symptoms.

### A. Evaluation of Claimant's Headaches at Step Two of the Sequential Evaluation

Claimant argues that the ALJ erred by not including headaches as a severe impairment at step two of the sequential evaluation. Pl.'s Br. at 16-17. The burden placed on an applicant at step two is not an exacting one. "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea v. McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d. Cir. 2003) (internal quotation omitted).

Defendant argues that because the inquiry at step two is whether Claimant has at least one severe impairment that justifies proceeding to the next step of the sequential

evaluation, the step two determination was not dispositive. The Court agrees. *Popp v. Astrue*, 2009 WL 959966, at *4 n.1 (W.D. Pa. Apr. 7, 2009); *see also Council v. Barnhart*, 127 F. App'x. 473 (11th Cir. Dec. 28, 2004) ("[T]he ALJ could not have committed any error at step two because he found that [Claimant] had a severe impairment . . . and moved on to the next step in the evaluation, which is all that is required at step two."). Here, the ALJ found that Claimant had the severe impairments of degenerative disc disease, cervical radiculitis, lumbosacral radiculitis, and internal derangement of both shoulders, and continued her analysis through the subsequent steps of the sequential evaluation process. R. 13-14. After proceeding through steps two and three, the ALJ then assessed Claimant's RFC and restricted her to only sedentary work. R. at 14. In doing so, the ALJ explained that he considered the functional limitations resulting from all of Claimant's medically determinable impairments, including those that are nonsevere. R. at 13-16. Consequently, substantial evidence supports the ALJ's step two assessment.

### B. Evaluation of Medical Opinions in Assessing Claimant's Residual Functional Capacity

Claimant argues that in evaluating her RFC, the ALJ gave improper weight to the medical opinions of Drs. Neno and Filippone, Claimant's treating physicians. The ALJ here gave little weigh to Dr. Filippone's opinion that the Claimant was totally disabled and unable to work, and partial weight to Dr. Neno's opinion that the Claimant could sit, stand, and/orwalk for less than one hour in an eight-hour workday. The ALJ should accord the treating physician's opinion great weight if it is well-supported clinical and laboratory diagnostic techniques and is not inconsistent with other evidence of record. See *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir.2008); 20 C.F.R. §§ 404.1527(c)(2); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'") (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)). However, the ALJ is not required to accept a treating physician's opinion uncritically, particularly when the opinion is not supported by clinical evidence, is internally inconsistent, or is not consistent with other record evidence. 20 C.F.R. § 404.1527(c)(2); *See Morales*, 225 F.3d at 317.

In concluding that Dr. Filippone's opinion merited little weight, the ALJ determined that it was inconsistent with Claimant's record showing that "she required treatment on only a monthly basis for her symptoms and generally felt some relief with pain medication," "an x-ray of her shoulder from December 2013 show[ing] a high riding humeral head, but no evidence of fracture, dislocation, or rotator cuff calcification," and that Claimant did "light household chores, and she could drive for 45 minutes." R. at 18. In giving Dr. Neno's opinion partial weight, the ALJ observed that "the Claimant could walk on her toes and heels and flex forward at the waist with her fingertips to two inches below the patellar pole," that although "the claimant has chronic pain, she reported that

she was doing 'okay' with her present medications," and that "the Claimant never required surgery or hospitalization for her symptoms." These observed inconsistencies are sufficient to discount Claimant's treating physicians' opinions. The Court finds that the ALJ's weighting of Claimant's physicians' opinions is supported by substantial evidence.

### C. Evaluation of Claimant's Residual Functional Capacity

Separately, Claimant argues that "the record supports more restrictive limitations than the ALJ assessed in the RFC finding," and cites Dr. Neno's treatment notes showing a reduced range of motion, MRI findings indicating serious abnormalities in Claimant's shoulder, and other medical evidence. Pl.'s Br. at 22-25. Among other things, the ALJ found that Claimant would be capable of performing a modified range of sedentary work except she could occasionally lift and/or carry ten pounds; sit for six hours, stand for two hours, walk for two hours. Defendant states that Dr. Filippone's own treatment notes described no difficulty ambulating, normal gait, normal stance, no tenderness in spine, negative straight leg raising, full muscle strength in her spine, ability to walk on both toes and heels, and ability to flex forward at her waist. R. at 277, 319-20, 323, 332, 344, 368, 376, 385, 449, 465, 471, 487, 490, 516. Defendant argues that Dr. Filippone's opinion that Claimant was unable to perform any postural or exertional activities, as well as inability to sit or stand during the workday, was also inconsistent with Dr. Neno's observation that Claimant had no edema, no clubbing, and no cyanosis in her extremities. R. 238-40. In light of this evidence, the Court finds that the ALJ's assessment of Claimant's Residual Functional Capacity is supported by substantial evidence.

### D. Evaluation of Claimant's Subjective Complaints

Claimant argues that the ALJ erred when he considered Claimant's subjective complaints of pain. Pl.'s Br. at 25-28. The regulations set out a two-step process for ALJs to evaluate a claimant's symptoms. *Lewis v. Berryhill*, 858 F.3d 858, 865–66 (4th Cir. 2017); 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2016 WL 1119029 (Mar. 2, 2016). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. § 404.1529(c)); *see also Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, assuming the claimant clears the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability," *Lewis*, 858 F.3d at 866, to work on a regular and continuing basis, *see Mascio v. Colvin*, 780 F.3d 632, 636–37, 639 (4th Cir. 2015). "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. § 404.1529(c)(4)).

The ALJ found that Claimant's medical impairments could reasonably be expected to cause her alleged symptoms, but that her statement concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. at 15. Substantial evidence

supports the ALJ's conclusion. Claimant's examinations were relatively normal and her pain appeared to have waxed and waned. R. at 277, 319-20, 323, 332, 344, 368, 376, 385, 447, 449, 465, 471, 487, 490-91, 516. In making this determination, the ALJ did not improperly consider Claimant's daily activities. Claimant's testimony that while she could fold clothes, her children carried the basket and washed and dried the clothing, that she would need to sit after an hour of standing is not meaningfully inconsistent with the ALJ's conclusion that Claimant performed light household chores such as preparing meals, sweeping, and doing laundry.

### IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

/s/ William J. Martini
WILLIAM J. MARTINI, U.S.D.J.